UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATASHA DAVIS, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:17-CV-1641 RLW |
| ) | |
| WASHINGTON UNIVERSITY IN ST. ) | |
| LOUIS and WASHINGTON UNIVERSITY ) | [consolidated with Case No. 4:17-cv-1785] |
| IN ST. LOUIS BOARD OF TRUSTEES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 34). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

A "403(b)" plan is a tax-sheltered annuity retirement program available to employees of nonprofit, charitable, religious, medical, and educational entities like Washington University in St. Louis ("Wash U"). *See* 26 U.S.C. §403(b)(1)(A). Washington U and its Board of Trustees (hereinafter "Defendants") sponsor the Washington University Retirement Saving Plan (the "Plan") to help their employees save for retirement. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq.*, which "establish[es] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans . . . ." ERISA §2(b), 29 U.S.C. §1002(b).

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

1

Defendants are the Plan's named fiduciaries. Defendants retained both TIAA and Vanguard as recordkeepers for the Plan and approved an asset-based compensation structure for TIAA and Vanguard. These asset-based fees were paid indirectly out of the Plan's investment options—which were exclusively TIAA and Vanguard products.

The Plan provides a menu of investment options from TIAA and Vanguard, including the option to invest in tax-deferred annuities through TIAA and mutual funds through either TIAA or Vanguard. Each participant is responsible for deciding in which of the Plan's options to invest and may change investments at any time. The Plan offers 36 TIAA options and 83 Vanguard mutual funds. *See* Consolidated Complaint (cited as "CC"), ECF No. 24, ¶99.

Plaintiffs allege in their Consolidated Complaint that Defendants violated their duties to act prudently and loyally in such ways that reduced the Plan participants' retirement savings. The Consolidated Complaint states Defendants violated their duties by: (i) causing the Plan to overpay for recordkeeping and administrative services; (ii) causing the Plan to pay higher fees by offering "retail" investment class shares rather than equally available, lower-cost "institutional" class shares in the same funds, (iii) including duplicative and poorly performing funds "bundled" into the Plan by TIAA and Vanguard mandates, resulting in higher fees and inferior investment returns; (iv) failing to take action to address persistent underperformance of certain investment options; and (v) approving a loan program that was prohibited by ERISA.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

## DISCUSSION

### A. Exhibits

As an initial matter, Plaintiffs object to Defendants' Exhibits A, B, F, G, H, I, J, K, L, M, N, O, Q, R, T, U, V, W, X, Y, Z, AA, and BB. Plaintiffs argue that these documents should not be considered because they "'are not referred to in the complaint,' they are not central to Plaintiffs' claims, and they are not the types of documents for which judicial notice would be appropriate." (ECF No. 36 at 6 (citing *Daugherty v. Univ. of Chicago,* No. 17 C 3736, 2017 WL 4227942, at *4 (N.D. Ill. Sept. 22, 2017)).

The Court does not consider matters outside the pleadings under Rule 12(c). Fed. R. Civ. P. 12(d). The Court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Plaintiffs have not contested the authenticity of any documents cited. Here, because Plaintiffs' Consolidated Complaint references returns data for the TIAA and Vanguard funds, the court properly considers the TIAA and Vanguard prospectuses, fact sheets, and the like. *See Meiners v. Wells Fargo & Co.*, No. CV 16-3981(DSD/FLN), 2017 WL 2303968, at *2 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir. 2018); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (affirming district court's decision not to convert the defendants' motion under Rule 12(b)(6) to a motion for summary judgment where the complaint explicitly referred to the "SPDs and the Trust Agreement, and both [were] central to plaintiffs' case").

3

### B. Counts I and II for Breach of Fiduciary Duty

Counts I and II allege that Defendants breached their fiduciary duties of prudence and loyalty in violation of ERISA Section 1104. To state a claim of imprudence, Plaintiffs must offer factual allegations plausibly showing that Defendants did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims". 29 U.S.C. §1104(a)(1)(B). "'Section [1104]'s prudent person standard is an objective standard that focuses on the fiduciary's conduct preceding the challenged decision—not the results of that decision.'" *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014) (quoting *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 917–18 (8th Cir. 1994)).

Plaintiffs argue that Wash U required plan participants to pay excessive investment and recordkeeping fees. Plaintiffs claim that certain funds were selected because they made higher revenue sharing payments to TIAA and Vanguard. (ECF No. 36 at 12). Plaintiffs further allege that for "most of the Class Period, the large majority of the Plan's 80+ Vanguard investment options were offered in retail share classes for which identical, cheaper shares were available." (ECF No. 36 at 12 (citing CC, ¶¶96, 97)). In addition, Plaintiffs assert that "[t]he asset-based revenue sharing the Plan paid TIAA and Vanguard was far higher than reasonable compared to the services the Plan received." (ECF No. 36 at 13 (citing CC, ¶42)). Plaintiffs maintain that a prudent fiduciary of a plan, such as Wash U, should have used its size and bargaining power to negotiate lower recordkeeping fees based upon the number of participants, not the total amount of assets. (ECF No. 36 at 14 (citing CC, ¶¶40-41)). In addition, Plaintiffs assert that there should have been "some sort of cap" to the recordkeeper fees. (ECF No. 36 at 15). Similarly, Plaintiffs allege that Wash U failed to utilize a single recordkeeper and failed to solicit bids for its recordkeeping services, which resulted in higher costs and duplicative, excessive fees for the Plan.

4

(ECF No. 36 at 16-17). Finally, Plaintiffs allege that Wash U agreed to an arrangement whereby TIAA provided recordkeeping services, which required mandatory proprietary investment options, such as the CREF Stock Account, which routinely underperformed. (ECF No. 36 at 17-19). Plaintiffs assert that Wash U breached its fiduciary duty by locking into the mandatory proprietary investment options without consideration of their performance. (ECF No. 36 at 19).

The Court holds that Plaintiffs fail to allege a breach of fiduciary duties based upon Plan participants' payment of purportedly excessive fees and recordkeeping fees. Here, the Consolidated Complaint pleads no facts sufficient to raise a plausible inference that Defendants took any of the actions alleged for the purpose of benefitting themselves or a third-party entity with connections to Wash U, at the expense of the Plan participants, or that they acted under any actual or perceived conflict of interest in administering the Plan. Instead, Plaintiffs start with the false premise that just because the Plan's fees could have been lower that necessarily Defendants' breached their fiduciary duties. Plaintiffs fail to allege that the process of choosing the investment options was flawed, other than a mere inference of fiduciary wrongdoing. These allegations are insufficient to allege a breach of fiduciary duties based upon excessive fees. Even if there is a fiduciary duty to choose a plan that offers an acceptable array of investment vehicles with reasonable fees, no rational trier of fact could find Wash U failed to satisfy that duty on the basis of the facts alleged in this Complaint. *See Hecker*, 556 F.3d at 586.

Further, the Court holds that the diverse selection of funds available to Plan participants negates any claim that Defendants breached their duties of prudence simply because cheaper funds were available. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) ("we hold the range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix

and range of investment options should be measured"). The Plan's investment lineup offers choices from an array of asset classes, investment styles, annuity options and fee profits. The Plan's all-in fees (ranging from 0.04% to 0.85%) are better than those approved in cases previously approved by courts. *See Meiners*, 898 F.3d at 823–24 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)) ("the existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice. Any other conclusion would exempt ERISA plaintiffs both from pleading benchmarks for the funds and from pleading internal processes about selecting funds. An ERISA plaintiff must offer more than "labels and conclusions" about the fees before a complaint states a claim."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596, n.7 (8th Cir. 2009) (quoting *Hecker*, 556 F.3d at 586) (stating that fiduciaries are not required by ERISA to select "the cheapest possible fund" available in the market); *Hecker*, 556 F.3d at 586 ("The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems).").

Likewise, the Court denies any claim based upon the Plan's recordkeepers or recordkeeping. Courts have disallowed claims premised on a Plan's choice to allow recordkeepers to be paid on an asset-based basis instead of on a flat fee basis. *See Sweda v. Univ. of Pennsylvania*, No. CV 16-4329, 2017 WL 4179752, at *8 (E.D. Pa. Sept. 21, 2017) (dismissing a cause of action on such a basis because "[t]his is a pure question of where the burden of recordkeeping costs should be placed—a question open to the discretion of a reasonable plan administrator"). Likewise, Plaintiffs provide no basis for removing the discretion afforded to Plan administrators and mandating recordkeeping fee caps or single recordkeepers.[2] *See Sweda*, 2017

---

[2] Notably, Wash U consolidated to one recordkeeper in June 2016, and offers dozens of low-cost institutional investments.

WL 4179752, at *8 ("With such low fees, it is not inevitable to say that recordkeeping fees were unnecessarily high, especially when there are rational bundling reasons to allow separate recordkeepers. Even if there *were* cheaper options available for recordkeeping fees, ERISA mandates that fiduciaries consider options besides cost.");

Further, the evidence before the Court indicates that the CREF Stock Account and CREF Money Market Account were not "locked in" to the Plan and could not be removed regardless of performance. Rather, these two options were merely "bundled" with the TIAA Traditional Annuity, and that "bundle" could be removed. *See* CC, ¶¶72-91; ¶74 (noting these are "bundled products"). The Court holds that "bundling services or revenue sharing ... are common and 'acceptable' investment industry practices that frequently inure to the benefit of ERISA plans." *Tussey*, 746 F.3d at 336. Therefore, the Court holds that Plaintiffs' allegations regarding the purported locking in of any TIAA investment options does not state a claim for breach of fiduciary duty as a matter of law.

### C. Count II for Underperformance

Plaintiffs allege that two of the Plan's more than 100 investment options "underperformed" over the alleged class period, as opposed to certain benchmark investment options. Plaintiffs assert that Defendants' retention of the CREF Stock Fund and the TIAA Real Estate Account were the result of a "flawed process." (ECF No. 36 at 19). Plaintiffs claim that "failure to monitor and remove the CREF Stock and TIAA Real Estate accounts state a claim for breach of the duty of prudence." (ECF No. 36 at 20). Finally, Plaintiffs claim that Wash U violated its fiduciary duties by retaining TIAA's traditional Annuity, which prohibits participants from re-directing their investment in that Annuity into other investment choices during employment, except in ten annual installments. (ECF No. 36 at 24) Plaintiffs claim that the retention of TIAA's traditional Annuity effectively denied participants the ability to move their money to other

7

investments as market conditions or the participants' investment objectives changed. (ECF No. 36 at 24).

Initially, the Court gives deference to Plan administrators in their investment decisions. *Tussey*, 746 F.3d at 335. Moreover, even if these funds underperformed, Plaintiffs have failed to state a cause of action under ERISA for their purported lack of performance. *See Sweda*, 2017 WL 4179752, at *10 ("[T[here is no cause of action in ERISA for 'underperforming funds.'"); *Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."). The Court holds that it cannot isolate these two funds to determine whether Defendants breached their fiduciary duties. "[T]he prudence of each investment is not assessed in isolation but, rather, as the investment relates to the portfolio as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citing *Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1043 (9th Cir. 2001); *Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999)); *Meiners*, 898 F.3d at 823 (citing *Tussey*, 850 F.3d at 960 & n.8 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset.").

The Court further holds that their claim against the TIAA Traditional Annuity also fails to state a claim for breach of fiduciary duty. As stated, Plaintiffs complain that the TIAA Traditional Annuity requires that withdrawals occur over then annual installments and charges 2.5% for taking a lump-sum distribution (as opposed to annuity payments). However, Plaintiffs' complaints are misplaced, given that these features are inherent in a guaranteed fixed annuity fund. The Traditional Annuity allows the beneficiary to purchase an amount of lifetime income based upon the contractual rate schedules in effect when each premium (i.e., contribution) is paid.

Plaintiffs have not alleged that the Traditional Annuity performed poorly, provided insufficient return, was too expensive or was otherwise an unreasonable or unsound option for a fiduciary to offer to plan participants who valued a guaranteed higher rate at the expense of liquidity. Therefore, the Court holds this fails to state a claim as a matter of law.

**D. Counts III and IV for Prohibited Transactions**

Plaintiffs allege that the TIAA loan program adopted by the Plan violates ERISA. Count III alleges that Wash U caused the Plan to engage in a transaction constituting a "direct or indirect ... lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. §1106(a)(1)(B). Count IV similarly alleges that, because participants move some of their accounts to the Plan's Traditional Annuity option "as security for repayment of a plan loan," this represents a transfer of Plan assets to TIAA. (CC, ¶¶218-19).

Section 1106(a)(1) provides (in relevant part): "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (B) lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. §1106(a)(1). Plaintiffs admit that a transaction prohibited under 29 U.S.C. §1106(a)(1)(B) will be exempt if it fits into one of the exemptions in 29 U.S.C. § 1108, but assert that such an argument is an affirmative defense that must be proven by Defendants. (ECF No. 36 at 24-25). Plaintiffs maintain that the loan program involved a prohibited transaction because TIAA kept all the earnings on the investments, less an amount credited to participants as interest on posted collateral. Thus, Plaintiffs contend the transfer of plan assets to TIAA violated ERISA because it benefitted a party in interest. (ECF No. 36 at 25).

The Complaint fails to allege any factual allegations articulating a plausible violation of ERISA, and the Court grants Defendants' Motion to Dismiss on this basis. The Court holds that ERISA specifically exempts participant loans from the prohibited-transaction rules. Although

9

Plaintiffs argue that this Court cannot consider that statutory exemption because such an affirmative defense is not required to be pled, Plaintiffs specifically pleaded this affirmative defense: Plaintiffs allege "[b]y accepting and approving the design and administration of a loan program that violated the conditions for the exemption available for plan loans set for the in 29 CFR 2550.408b-1, Defendants have caused the Plan to engage in prohibited transactions in violation of ERISA §406(a)." CC, ¶212. Because it is referenced in Plaintiffs' Consolidated Complaint, the Court will consider the exemption on this Motion to Dismiss. Upon consideration of the loan program at issue, the Court holds that the program, including the transfer of assets to the Traditional Annuity to serve as collateral for the loan, is prudent and lawful. ERISA requires that a participant loan be "adequately secured," 29 U.S.C. §1108(b)(1)(E), to ensure that "loss of principal or interest will not result from the loan," 29 C.F.R. §2550.408b-1(f)(1). Holding collateral in the Traditional Annuity provides a mechanism to ensure that the participant loan is "adequately secured" and does not constitute a transfer to TIAA. Plaintiffs have not shown how this securitization violates ERISA or is an imprudent act by Defendants. Accordingly, the Court grants Defendants' Motion to Dismiss for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 34) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 28th day of September, 2018.

                                                         _Ronnie L. White_
                                                         RONNIE L. WHITE
                                                         UNITED STATES DISTRICT JUDGE